**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Allan Morgal, | No. CV-26-00654-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Ameriprise Financial Services LLC, | |
| Defendant. | |

Before the Court is Defendant Ameriprise Financial Services LLC's ("Ameriprise") Motion to Compel Arbitration and Stay Proceedings. (Doc. 8). *Pro se* Plaintiff Allan Morgal ("Morgal") has filed a Response in opposition. (Doc. 11). He has also filed a Motion to Remand this matter back to the Superior Court of Arizona in Maricopa County. (Doc. 10). Ameriprise has filed a Response opposing the Motion to Remand (Doc. 14) and Morgal has filed a Reply (Doc. 17). For the reasons stated below, the Court will deny Morgal's Motion to Remand and grant Ameriprise's Motion to Compel.

## I.     Background

Morgal first brought this case in the Superior Court of Arizona in Maricopa County for the following three counts against Ameriprise: (1) a violation of A.R.S. § 44-326; (2) a violation of A.R.S. § 44-302, and lastly, what Morgal characterizes as (3) "violation against the SEC." (Doc. 1-1 at ¶¶ 6–9). It is Morgal's position that he opened an account with a bank called Olde Financial in 1995 so that his funds could be managed by a stockbroker. (*Id.* at ¶ 8). He moved in the middle of that year but never updated his address with the

bank. (*Id.* at ¶ 9). Olde Financial was later acquired by H & R Block. (*Id.* at ¶ 10). Not long after, in 2009, H & R Block was acquired by Ameriprise. (*Id.*) Two years later, in 2010, Morgal says he became aware of an account that belonged to him that still contained his funds. (*Id.* at ¶ 11). He says he contacted Ameriprise about the account and although Ameriprise confirmed the existence of the account and promised to send him a check at his current address, he says the check never arrived. (*Id.* at ¶¶ 12–14). According to Morgal, his further inquiries were all fruitless. (*Id.* at ¶ 15). At some point, Morgal believes his funds were escheated to the state of Arizona. (*Id.* at ¶ 16). For now, Morgal would like the case to be sent back to the Superior Court of Arizona in Maricopa County.

## II.    Discussion

The Court will deny Morgal's Motion to Remand because the Court finds that there is complete diversity between the parties and the case is properly in federal court. Further, the Court will grant Ameriprise's Motion to Compel Arbitration because a valid arbitration agreement exists between the parties and it encompasses the dispute at issue.

### A.    Motion to Remand

Unless otherwise specified by Congress, a civil action brought in state court can be removed by a defendant to the District Court having original jurisdiction where such an action is pending. 28 U.S.C. § 1441(a). For the District Court to exercise its jurisdiction over a removed civil case there must be diversity of citizenship between the parties or the existence of a federal question. 28 U.S.C. § 1441. Where the existence of a federal question is absent, a District Court can still exercise original jurisdiction over civil actions where the controversy is between citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. §1332(a). In measuring the amount in controversy, a court must "assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (internal quotations and citations omitted). If a plaintiff's complaint does not specify the amount of damages, the defendant bears the burden of demonstrating by a preponderance of the

evidence that the amount in controversy requirement is satisfied. *See Singer v. State Farm Mutual Automobile Ins. Co.,* 116 F.3d 373, 376 (9th Cir.1997); *Gaus v. Miles, Inc.,* 980 F.2d 564, 567 (9th Cir.1992). But the standard of doing so is not stringent.  The burden is met if the removing defendant can show that it is "facially apparent from the allegations in the complaint that plaintiff's claims exceed $75,000." *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002).  Lastly, whether removal jurisdiction exists must be determined by reference to the well-pleaded complaint. *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 808 (1986).

The Court finds that the removal effectuated by Ameriprise was proper. Morgal spends considerable time in his Motion to Remand arguing that federal question jurisdiction does not exist. (Doc. 10 at 3).  The point is undisputed.  Ameriprise agrees that no federal question jurisdiction exists in this case.  (Doc. 14 at 2).  Ameriprise removed the matter on the basis of diversity jurisdiction.  (Doc. 14 at 2).   Complete diversity between the parties allows this Court to exercise its original jurisdiction over both of them.  Morgal, as he states himself, is a resident and thereby citizen of Scottsdale, Arizona.  (Doc. 10 at 10).  Ameriprise is a limited liability company whose citizenship is in Delaware and Minnesota.  (*Id.*)  Although limited liability companies are citizens of every state in which their members are citizens, Ameriprise's disclosure statement only shows that it was incorporated under the laws of the state of Delaware and that its principal place of business is in Minnesota.  (Doc. 7 at 2). *See also Couvrette v. Wisnovsky*, 2024 WL 5126286, at *5 (D. Or. Dec. 16, 2024) ("In the Ninth Circuit, LLCs are treated as citizens of every state in which their members are citizens.").  The amount in controversy in this matter is also over $75,000. In his Complaint, Morgal states that he is "owed $153,547.27, which represented the initial funds plus 18% interest compounded monthly until the date of escheatment, tentatively identified as August 8, 2018." (Doc. 10 at ¶ 20). Morgal goes on to say that he is asking for the "maximum economic, non-economic, actual statutory (pursuant to ARS 44-326 and ARS 44-302), emotional, general, special, punitive, and other damages available, including interest at the statutory rate of 18% compounded monthly from the

year 2000 until the date of escheatment as stipulated under ARS 44-326." (*Id.* at ¶ E). Because Morgal's Complaint demands more than the requisite amount of $75,000, the Court finds that the amount in controversy requirement of diversity jurisdiction is satisfied. *Adkins v. J.B. Hunt Transp., Inc.*, 293 F. Supp. 3d 1140, 1144 (E.D. Cal. 2018) ("To determine if the amount in controversy requirement is met, the court looks to the amount demanded by the plaintiff in the Complaint."). Therefore, this Court has original jurisdiction over this case and Morgal's Motion to Remand is properly denied.

### B.    Arbitration Agreement

In its Motion to Compel Arbitration, Ameriprise argues that Morgal's claims are subject to a fully executed Submission Agreement. (Doc. 8 at 2). In protest, Morgal argues that the scope of the Submission Agreement was far more limited than Ameriprise now contends. (Doc. 11 at 2). Morgal especially takes issue with the arbitration forum's limited discovery and reasons that making him arbitrate his claims would be unduly prejudicial because of the limited discovery available to him. (*Id.* at 3).

A court deciding a motion to compel arbitration must determine whether and to what extent the parties agreed to arbitrate. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628 (1985). This is a two-step inquiry composed of the following two requirements: (1) whether a valid agreement to arbitrate exists and if it does; (2) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). When evaluating the validity of an arbitration agreement, courts apply ordinary state law principles that govern the formation of contracts and of course the usual contract defenses. *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (internal quotation marks and citation omitted); see also *Laster v. T-Mobile USA, Inc.,* 2013 WL 4082682, at *2 (S.D. Cal. July 19, 2013). The arbitration agreements themselves are governed by the Federal Arbitration Act ("FAA"). *See* 9 U.S.C. § 2. Court have long recognized the FAA as a "liberal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). And when a court is satisfied that the making of the agreement or the failure to

comply with it is not at issue, the court must compel arbitration. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019).

The Court finds that the Submission Agreement is both a valid agreement to arbitrate and that it encompasses the disputed issue. Both parties executed a post-dispute agreement to arbitrate on March 1, 2024, through the Financial Industry Regulatory Authority ("FINRA"). The pertinent part of the Submission Agreement states the following:

> 1. The undersigned parties ("parties") hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, and all related cross claims, counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure.

(Doc. 8-2, Ex. B, Submission Agreement). The Submission Agreement bears Morgal's signature[1] and Morgal does not contend that any of the contract defenses such as fraud or duress apply to the Submission Agreement. He instead focuses on the substantive unconscionability of the discovery procedures in the arbitration forum. (Doc. 11 at 6). The argument is not altogether without merit. An otherwise binding arbitration agreement can be found substantively unconscionable[2] when the actual terms of the agreement are "overly oppressive or unduly harsh to one of the parties." *Clark v. Renaissance W., LLC*, 307 P.3d 77, 79 (Ariz. Ct. App. 2013). As a result of these one-sided terms, a litigant might be prevented from effectively vindicating their rights in the arbitral forum. *Id.* Here, admittedly, the arbitral forum has a more streamlined and limited process for discovery than a federal court. *Arik v. Meyers*, 2020 WL 515843, at *2 (D. Nev. Jan. 31, 2020); *see also* FINRA Rules of Discovery 12505-12514. Arizona courts say that "[p]rospective

---

[1] The Court notes that a signature is not a dispositive determination of what makes an arbitration agreement valid. Even an arbitration agreement without a signature can be valid. *Collins v. Macy's Inc.*, 2019 WL 5188749, at *2 (D. Ariz. Oct. 15, 2019).

[2] Unconscionability, like other contract defenses, is analyzed under state law; here the applicable state law is Arizona's. *Scott-Ortiz v. CBRE Inc.*, 501 F. Supp. 3d 717, 725 (D. Ariz. 2020). And while there are two kinds of unconscionability that can apply to an arbitration agreement, procedural and substantive, Morgal only advances the theory of substantive unconscionability.

litigants are at least entitled to discovery sufficient to adequately arbitrate their statutory claim as part of being able to effectively vindicate their rights." *Gullett on behalf of Est. of Gullett v. Kindred Nursing Centers W., L.L.C.*, 390 P.3d 378, 382 (Ariz. Ct. App. 2017) (internal quotations and citations omitted). Of course, a party is not entitled to "unfettered discovery" or discovery on the same footing as a federal court. *Id.* And the parties are entitled to embrace a narrower form of discovery than required by the Federal Rules of Civil Procedure as part of their agreement. *Id.* Indeed, "by agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Id.*

To decide whether discovery so hamstrings a litigant such that he cannot vindicate his rights, courts usually consider the initial amount of discovery allowed and the burden imposed on the litigant to obtain additional discovery. *Id.* Here, the limited discovery Morgal protests is the arbitration forum's six-year record retention policy. (Doc. 11 at 6). Morgal contends that he is capped at only asking for records that extend back six years from the initiation of the action. (*Id.*) But the Court is not persuaded that is an accurate characterization of the discovery protocols in the arbitral forum. As pointed out by Ameriprise, the Submission Agreement itself does not support a limitation on discovery. (Doc. 13 at 6; *see also* Doc. 8-2, Ex. B, Submission Agreement). And, the six-year document retention policy does not originate from the arbitral forum but rather is consistent with SEC regulations on record-keeping for broker-dealers like Ameriprise. (Doc. 13 at 6). Additionally, Ameriprise's point is well-taken that the discovery guidelines promulgated by the arbitral forum are flexible and allow the arbitrator to expand discovery as appropriate. (*Id.*) Finally, finding that the discovery protocols in arbitration proceedings are limited and thus unconscionable, would render every arbitration agreement void, a result that simply defeats the liberal policy of favoring arbitration agreements. *Abeyrama v. J.P. Morgan Chase Bank*, 2012 WL 2393063, at *4 (C.D. Cal. June 22, 2012); *see also Rogers v. Nelson*, 2017 WL 1711155, at *5 (S.D. Cal. May 3, 2017) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011)) ("[A] court may not rely on the

uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable....”). So, the Court finds that the Submission Agreement is not unconscionable.

The Court also finds that the Submission Agreement encompasses the dispute at issue. By the Submission Agreements' clear terms, it includes the “present matter in controversy,” meaning the dispute between Ameriprise and Morgal regarding Morgal's account. (Doc. 8-2, Ex. B, Submission Agreement). And neither party disputes that the Submission Agreement applies to the current case. While Morgal attempts to state that the Submission Agreement expired at the conclusion of the proceedings in the arbitral forum, the argument is also unavailing. Whether the Submission Agreement expired when the arbitral forum dismissed Morgal's case without prejudice, is a determination that rests exclusively with the arbitral forum. *Optimum Prods. v. Home Box Off.,* 839 F. App'x 75, 78 (9th Cir. 2020) (“[D]isputes over expiration or termination [of the arbitration agreement] must be submitted to arbitration.”). For those reasons, Ameriprise's Motion to Compel Arbitration will be granted.

### C.    Attorneys' Fees

Both parties seek an award for attorneys' fees and costs. (Doc. 8 at 6 & Doc. 10 at 4). Under A.R.S. §12-341.01 a prevailing party may seek reasonable attorneys' fees “in any contested action arising out of contract.” A.R.S. §12-341.01. Under Arizona law, the award is not mandatory, rather it is at the discretion of the trial court. *See Munger Chadwich, P.L.C. v. Farwest Development and Const. of the Southwest, LLC* 235 Ariz. 125 (Ariz. Ct. App. 2014); *American Const. Corp. V. Philadelphia Indem. Ins. Co.,* 667 F. Supp.2d 1100 (D. Ariz. 2009).

Morgal cannot recover attorneys' fees from Ameriprise because he is a *pro se* litigant. It is well-settled law that a *pro se* litigant may not recuperate attorneys' fees. *Kay v. Ehrler,* 499 U.S. 432, 436–37 (1991). As to Ameriprise, because this matter arose out of contract, the Submission Agreement, Ameriprise may seek an award of reasonable attorneys' fees from this Court. Ameriprise may file such a motion at a later time.

**D.    Stay of Proceedings**

Ameriprise also requests that the Court enter a stay of proceedings. Under 9 U.S.C. § 3, when a court finds that the suit is "referable to arbitration" it shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. . . ." 9 U.S.C. § 3. Because the Court has found this matter referable to arbitration, it will stay all proceedings.

Accordingly,

**IT IS ORDERED** that Morgal's Motion to Remand (Doc. 10) is **denied.**

**IT IS FURTHER ORDERED** that Ameriprise's Motion to Compel Arbitration (Doc. 8) is **granted.** The parties shall proceed to arbitration as dictated by the Submission Agreement and this matter is stayed. The parties shall file a status report with the Court on **October 30, 2026**, and every 90 days thereafter.

Dated this 31st day of July, 2026.

Honorable Diane J. Humetewa
United States District Judge